# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:18-cv-00612-RJC-DSC

| | |
|---|---|
| **LANCE PATTERSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CITY OF CHARLOTTE,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |

**THIS MATTER** comes before the Court on Defendant City of Charlotte's Motion to Exclude and Strike the Reports and Testimony of Plaintiffs' Expert Witness Kurt Geisinger (Doc. No. 298). For the reasons stated herein, the Motion is **DENIED as moot** as to Plaintiff Smith-Phifer's trial and **GRANTED** as to Plaintiff Patterson's trial.

## I.    BACKGROUND

This matter consists of four separate actions filed by five plaintiffs asserting, among other things, race discrimination in the Charlotte Fire Department. The Court consolidated the actions for purposes of discovery. Joint-Plaintiffs Smith-Phifer and Patterson's jury trial was scheduled to begin on November 7, 2022. In connection with the jury trial, the Court ruled on various motions in limine, including a request to exclude Plaintiff's expert Dr. Kurt Geisinger's testimony, which the Court denied without prejudice subject to voir dire qualification at trial. On the Friday before trial, both Plaintiffs filed a motion to continue the trial due to Plaintiff Patterson's medical

issue.  The Court granted the motion to continue as to Patterson and denied the motion to continue as to Plaintiff Smith-Phifer.

As scheduled, Plaintiff Smith-Phifer's jury trial began on November 7, 2022.  During Plaintiff Smith-Phifer's case-in-chief, she called expert Dr. Kurt Geisinger to testify about the adverse impacts of the written tests for the 2015 to 2018 Battalion Chief promotional processes. Before Dr. Geisinger testified, Defendant made a motion to exclude Dr. Geisinger from testifying because his testimony was based on insufficient facts or data and unreliably applied principles and methods.  Based on the arguments, the Court, erring on the side of caution, denied Defendant's motion to exclude Dr. Geisinger from testifying.  Dr. Geisinger testified during the Plaintiff Smith-Phifer's trial.

During Dr. Geisinger's testimony, he admitted that a page of his expert report was missing and not provided to Defendant.  (Doc. No. 299-1 at 78:19-79:9).  In addition, Dr. Geisinger's testimony was unreliable in a number of other ways, as discussed in more detail below.  Based on Dr. Geisinger's omission from his expert report, Defendant moved to strike his reports and testimony from Plaintiff Smith-Phifer's trial and exclude his reports and testimony from Plaintiff Patterson's trial.  (Doc. No. 298).  Thereafter, Plaintiff Smith-Phifer and the Defendant resolved Plaintiff Smith-Phifer's claims without further intervention by the Court or jury; therefore, Defendant's request as to Smith-Phifer is moot.  However, Defendant's request to exclude Dr. Geisinger's reports and testimony from Plaintiff Patterson's trial is ripe for ruling by the Court.

## II.  DISCUSSION

### A.  Federal Rule of Civil Procedure 26(a)

Federal Rule of Civil Procedure 26(a)(2) requires a party to disclose the identity of any expert witness that may be used at trial.  The disclosure must be accompanied by a written report

including a complete statement of, among other things, "all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming them," and "any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B). If a party fails to provide the witness or information required by Rule 26(a), then that party may not use the undisclosed information or witness to supply evidence at a trial, unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). District courts have "broad discretion" in determining whether nondisclosure under Rule 26(a)(2) is substantially justified or harmless. *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). In exercising this discretion, courts are "guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.*

Considering these factors, after the Court observed Dr. Geisinger's testimony during Plaintiff Smith-Phifer's trial, the Court, in its discretion, will exclude Dr. Geisinger's reports and testimony. Patterson argues the non-disclosure of a page of Dr. Geisinger's expert report is harmless because it relates only to the 2018 Battalion Chief promotional process's adverse impact on females, which is not relevant to Patterson, and also because Defendant had the opportunity to depose Dr. Geisinger and ask about this missing information. However, after observing Dr. Geisinger's testimony and hearing the way in which Dr. Geisinger maintained his notes and records and completed his expert reports, the Court has no confidence that the only page and/or information missing from Dr. Geisinger's reports relates to the 2018 Battalion Chief promotional process nor whether the missing information will have a bearing on Dr. Geisinger's trial testimony.

The Court observed during Dr. Geisinger's testimony that Dr. Geisinger had poor record keeping, disorganization in completing his reports, poor memory about what he did when completing his expert reports, and was clearly confused about the calculations he completed and the information he actually included in his reports. Dr. Geisinger testified that he only "recently" discovered that he omitted a page from his expert report and a week before Plaintiff Smith-Phifer's trial he discovered he had his underlying calculations that he previously said he did not keep; however, Defendant's counsel apparently did not receive this information. Moreover, other than Dr. Geisinger's disorganization, Plaintiff did not provide an explanation for the missing page nor has Plaintiff produced the missing page and/or information to Defendant. Based on the totality of Dr. Geisinger's practices in preparing and providing his expert report and after observing his trial testimony, Plaintiff has not demonstrated that Dr. Geisinger's omissions relate only to adverse impact on females for one year, that Dr. Geisinger even knows what information is or is not contained on the page omitted, and that he did not omit other pages or information relevant to his testimony.

Accordingly, the Court's lack of confidence in Dr. Geisinger's knowledge about what is and is not missing from his expert reports and disorganization surrounding his completion of the reports leads the Court to conclude the omitted page or pages may lead to surprise which the Court is not confident can be cured but that would disrupt trial. Additionally, the Plaintiff's explanation is not sufficient to allow Dr. Geisinger to testify, but rather strengthens the Court's already-existing concerns about Dr. Geisinger's testimony.

## B. Federal Rules of Evidence 702 and 403

The Court in its gatekeeping function also finds it appropriate to exclude Dr. Geisinger's reports and testimony because they do not meet the standards in Rule 702. Rule 702 sets out considerations in the admissibility of expert testimony. It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Courts have distilled the requirements of Rule 702 into two crucial inquiries: 1) whether the proposed expert's testimony is relevant; and 2) whether it is reliable." *Yates v. Ford Motor Co.*, 113 F. Supp. 3d 841, 845 (E.D.N.C. 2015). "Federal Rule of Evidence 104(a) allows for the exclusion of unreliable expert testimony if the proponent cannot establish by a preponderance of the evidence that these requirements are met." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 792 (D. Md. 2013). "The Supreme Court has made clear that it is the trial court's duty to play a gatekeeping function in deciding whether to admit expert testimony: 'The trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Crisp*, 324 F.3d 261, 265 (4th Cir. 2003) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).

In *Daubert*, the Supreme Court announced five factors that district courts may consider in assessing the relevance and reliability of expert testimony. 509 U.S. at 593–94. Those factors are:

(1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community. *Crisp*, 324 F.3d at 266 (quoting *Daubert*, 509 U.S. at 593–94). The *Daubert* factors, however, are neither definitive nor exhaustive. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–51 (1999). "When . . . the proffered expert testimony is not scientific in nature, the district court must still perform the gatekeeping function," and "consider whatever factors bearing on validity that the court finds to be useful." *U.S. v. Hammoud*, 381 F.3d 316, 337 (4th Cir. 2004). In determining the admissibility of expert testimony, district courts "should be conscious of two guiding, and sometimes competing, principles: (1) that Rule 702 was intended to liberalize the introduction of relevant expert evidence; and (2) that due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Id.* (quotation marks omitted). "[A] court should exclude expert statistical testimony when the data relied upon is connected to the expert's opinion only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *EEOC v. Freeman*, 961 F. Supp. 2d 783, 793 (D. Md. 2013), *aff'd*, *EEOC v. Freeman*, 778 F.3d 463 (4th Cir. 2015).

Here, before Dr. Geisinger testified at Plaintiff Smith-Phifer's trial Defendant made a motion to exclude Dr. Geisinger from testifying because his testimony was based on insufficient facts or data and unreliably applied principles and methods. The Court, erring on the side of caution that the issue was one of credibility rather than admissibility, denied Defendant's motion to exclude Dr. Geisinger from testifying. However, the Court was present for Dr. Geisinger's

testimony during Plaintiff Smith-Phifer's trial and observed first-hand and in person the concerns Defendant raised in its motion to exclude Dr. Geisinger's testimony. Indeed, Defendant's cross-examination brought into clear focus the deficiencies in Dr. Geisinger's testimony as it relates to the Rule 702 requirements, specifically whether he reliably applied his principles and methods. For the Court, what began as a question of credibility rather than admissibility, became, through Dr. Geisinger's trial testimony, an admissibility question.

> At trial Dr. Geisinger testified:
>
> As it turns out, I kept almost everything. I literally -- in going through to prepare for this, I was shocked to find numbers on the back of envelopes and on the back of pieces of cardboard and stuff like that, like the back of a pad of paper. I'm not very proud of the fact that I didn't do it in a more organized fashion, but, frankly, I tend to do this work late at night and on weekends and stuff like that. And, I mean, that's what happens, and that's probably my work style. And I -- I -- I will honestly say I learned something in -- from -- from Dr. Locklear, as well, in terms of I liked her table, so I may do that in the future myself . . . . Well, as I said before, I had done the Fisher Exact reports on the first, and I said that in the deposition. I didn't remember -- because it's so easy to do it -- you can do it on a -- I mean, a cellphone, for gosh sakes, at this point in time. And so I didn't remember typing it up, but I had a whole typed-up sheet with all the Fisher Exact tests. And I was surprised when I found it in the file, to be honest, because I had redone it when I was writing the reaction report. So, you know, that's just -- I don't want to call it sloppy, but it's a lack of – I'm a 71-year-old, and my memory is not as sharp as it maybe once was, and I apologize for that.

(Doc. No. 299-1 at 74:5-75:10). As to the nondisclosure of a page(s) and information he stated he "think[s]" he left off a page from his report and that he "only found out that . . . more recently." (Doc. No. 299-1 at 33:1-3; 78:12-79:10). He said these deficiencies were due to his "remarkably busy life" he did "the best [he] could." (*Id.* at 72:2-22). He agreed that as a general matter a person reviewing his reports should be able to understand what calculations he completed and recreate them; however, he noted that "[he] had done a lot of these analyses the summer of '20, and . . . didn't necessarily recall what they were at the time." (*Id.* at 41:17-42:2). And he admitted that his initial report did not include calculations and that he did not keep his underlying calculations

because he did not find them relevant and thought they were easy to complete.[1] (*Id.* at 55:19-56:12). However, he asks the Court and jury to trust his opinions that the written tests for certain Battalion Chief promotional processes had adverse impact on African Americans and females. Dr. Geisinger must do more than complete his calculations in a disorganized fashion which he described as "embarrassing," without providing them, and ask that his conclusions are trusted. (*Id.* at 55:19-56:12). While he did provide some calculations later, the Court is also not persuaded, after hearing and observing his trial testimony that he reliably applied the methods to the data. For example, there were errors in the information on which he completed his report. He testified he "actually made a mistake in [his] initial report. [He] understood seven white males had passed and one black male had passed. [He] later found out it was two and one, and so [he] revised [his] data accordingly." (*Id.* at 52:8-53:5). Additionally, he agreed that he incorrectly characterized Kjeldsen's deposition testimony in his report based on his "reaction" to reading the "whole deposition." (*Id.* at 62:21-63:15).

The above shortcomings, among others the Court need not continue to delve into, raise serious concerns about whether Dr. Geisinger reliably applied his principles and methods to the data, and whether he consistently and reliably used the correct data when applying his principles and methods. The Court must act as a gatekeeper to ensure the jury hears helpful and reliable expert opinion testimony. After the Court, in person at trial heard and observed Dr. Geisinger's testimony, as a whole, the Court concludes the deficiencies in Dr. Geisinger's reports and testimony go beyond an issue of credibility and do not meet the Rule 702 reliability standard. In addition, given his confusion, forgetfulness, disorganization, distraction, and missing information,

---

[1] As noted, when he found his underlying calculations a week before trial, Defendant was not informed of this.

the Court does not find that Dr. Geisinger's reports and testimony would be helpful to the jury as required under Rule 702.

Finally, for all these reasons, the Court also finds under Rule 403 that any probative value in his testimony is substantially outweighed by the danger of confusing the jury and wasting jury's time.

Accordingly, the Court will exclude Dr. Geisinger's reports and testimony from Plaintiff Patterson's trial.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant City of Charlotte's Motion to Exclude and Strike the Reports and Testimony of Plaintiffs' Expert Witness Kurt Geisinger (Doc. No. 298) is **GRANTED** as to Plaintiff Patterson's trial and **DENIED as moot** as to Plaintiff Smith-Phifer's trial.

**SO ORDERED.**

Signed: November 18, 2022

Robert J. Conrad, Jr.
United States District Judge